IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRADERIGHT CORP., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No.: 06 C 5948 ) |
| BORIS AND IGOR MINAKHI, as Trustees of the Minakhi Family Trust, | ) Suzanne B. Conlon, Judge ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

TradeRight Corp. seeks a declaratory judgment that neither the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("the FAA"), nor the National Association of Securities Dealers ("the NASD") Code of Arbitration Procedure require arbitration of its dispute with Boris and Igor Minakhi, Trustees of the Minakhi Family Trust ("the Trust"). The Trust lost over $10 million due to an unauthorized trading scheme perpetrated by its broker, Brian Mitchell of Austin Securities. TradeRight licensed trading software to Austin Securities. The Trust filed an arbitration claim with the NASD seeking to impose joint and several liability for its losses on TradeRight. The Trust argued TradeRight assisted and participated in Mitchell's fraudulent scheme by providing its software to Austin Securities and failing to exercise ordinary care and supervision. The Trust moves to dismiss because as a member of the NASD, TradeRight must submit to mandatory arbitration of the Trust's claim. Alternatively, the Trust moves to transfer venue to the Eastern District of New York because Mitchell, a material witness, is beyond the subpoena power of this court. For the reasons set forth below, the motion is denied.

## BACKGROUND

The following facts are derived from the complaint. TradeRight's principal place of business is in Illinois. Compl. at ¶ 1. At all relevant times, it was a member of the NASD and a broker-dealer. *Id.* The Trust is domiciled in New York. *Id.* at ¶ 2. Brian Mitchell was the Trust's broker. *Id.* at Ex. A, page 2. He operated Austin Securities. *Id.* at Ex. A, page 3. Mitchell executed unauthorized trades of Trust funds, causing loss of over $10 million. *Id.* at Ex. A, page 2. Mitchell pleaded guilty to securities fraud and was sentenced to five years in prison. *Id.* at Ex. A page 1; Defs. Mot. at ¶ 32.

TradeRight had no relationship with the Trust or its trustees. Compl. at ¶ 7. TradeRight licensed Neovest trading software to Austin Securities. *Id.* Austin Securities used Neovest to route trades. *Id.* at ¶ 8. TradeRight provided customer service to Austin Securities in connection with Neovest. *Id.* at ¶¶ 8, 11, 19. TradeRight did not act as a clearing broker for Austin Securities. *Id.* at ¶ 9. Because TradeRight was not acting as a clearing broker, it did not have access to Austin Securities' accounts, nor could it determine which accounts were generating particular orders. *Id.*

In its arbitration claim with the NASD, the Trust sought to hold TradeRight liable for Mitchell's unauthorized trades. Compl. Ex. A. The Trust argued that TradeRight's Neovest software enabled Mitchell to manipulate Trust funds. *Id.* Ex. A. page 2. The Trust claimed TradeRight was jointly and severally liable under a theory of common law fraud, breach of contract, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, negligence and violation of NASD rules. *Id.* In this case, TradeRight asserts it is not required to arbitrate the Trust's claim because the Trust was not its customer under NASD rules. *Id.* at ¶¶ 14-20.

## DISCUSSION

I. **Motion to Dismiss**

   A. **Legal Standard**

A motion to dismiss challenges the sufficiency of the complaint, and dismissal is warranted only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) (quoting *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)). On a motion to dismiss, all well-pleaded allegations are accepted as true and all reasonable inferences are drawn in favor of the nonmoving party. *Cler*, 423 F.3d at 729. To survive a motion to dismiss, a complaint "need not plead particular legal theories or particular facts in order to state a claim." *DeWalt*, 224 F.3d at 612. All that is required is a short and plain statement giving defendants fair notice of the nature and basis of the claim. *Id.*

Any written instrument attached to a complaint is considered a part of the complaint. Fed. R. Civ. P. 10(c). Attached to the complaint are the Trust's NASD arbitration claim and a sample subscription license agreement for Neovest software. *See* Compl. Exs. A and B. These documents may be considered on a motion to dismiss. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

   B. **Arbitrability**

The Trust argues the complaint must be dismissed because TradeRight is subject to mandatory arbitration under the NASD Code. The question of arbitrability is for judicial determination "unless the parties clearly and unmistakably provide otherwise." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). In this case, there is no written contract between the parties, and thus no clear and unmistakable evidence that the parties

intended to submit the question of arbitrability to the arbitrators. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). Although most arbitrability questions are presumptively for the arbitrators, "a gateway dispute about whether the parties are bound by a given arbitration clause" should be decided by the court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *see also Miller v. Flume*, 139 F.3d 1130, 1134 (7th Cir. 1998) (NASD Code's empowerment of arbitrators to interpret and apply its provisions is not clear and unmistakable evidence of parties' agreement that arbitrators decide arbitrability); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 57 (2d Cir. 2001) (one party's membership in the NASD is insufficient evidence of the parties' clear and unmistakable intent to submit the question of arbitrability to arbitrators). Accordingly, the court must resolve the issue whether the Trust and TradeRight agreed to arbitrate their dispute.

Whether an issue is arbitrable is a matter of contract interpretation. A party cannot be required to submit a dispute to arbitration if it did not agree to arbitrate. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). Doubts concerning arbitrability should be resolved in favor of arbitration. *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (FAA embodies a "liberal federal policy favoring arbitration agreements")).

TradeRight is a member of the NASD. Compl. at ¶ 1. The NASD Code provides that

> Any dispute, claim, or controversy eligible for submission . . . between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code . . . upon the demand of the customer.

NASD Rule 10301(a). TradeRight must submit to arbitration if the Trust is a "customer" and the dispute arises in connection with TradeRight's business. The Trust argues it was a customer of

4

TradeRight because Mitchell's trades were executed using TradeRight's Neovest software. TradeRight responds that the Trust was not a customer because TradeRight had no business relationship with the Trust.

The NASD Code does not define the term "customer," although the definition section of the NASD Manual provides that "[t]he term customer shall not include a broker or dealer." NASD Manual General Provisions § 0120(g). The Trust argues § 0120(g) defines "customer" for purposes of the NASD Code, and because the Trust is neither a broker nor a dealer, by negative inference it must be a customer. This expansive argument has been rejected. *See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001). Courts have, however, taken a broad view of the term. *John Hancock*, 254 F.3d at 60 (collecting cases); *see also Fin. Network Inv. Corp. v. Thielbar*, No. 02 C 6117, 2003 WL 22019348, at *2 (N.D. Ill. Aug. 26, 2003) (Coar, J.). "Customer" has been interpreted to include not only individuals who opened accounts with a NASD member, but also those with indirect business relationships with NASD members. *See, e.g., Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 357 (2d Cir. 1995) (investors were customers even though NASD member's representative never opened an account for them but instead diverted their funds); *First Montauk Sec. Corp. v. Four Mile Ranch Dev. Co., Inc.*, 65 F. Supp. 2d 1371, 1381 (S.D. Fla. 1999) ("customers" not limited to those with accounts at a NASD member firm); *Vestax Securities Corp. v. McWood*, 116 F. Supp. 2d 865, 869 (E.D. Mich. 2000) (customer includes those with an informal business relationship with a NASD member's representative).

TradeRight alleges it had no relationship, formal or informal, with the Trust. Compl. at ¶ 7. TradeRight had an agreement with Austin Securities to license Neovest software and provide customer support. *Id.* Trades involving Trust funds were routed using Neovest, and software issues

were addressed by employees of Austin Securities and TradeRight. *Id.* at ¶ 8. TradeRight was not Austin Securities' clearing broker. *Id.* at ¶ 9. Therefore, TradeRight had no access to information regarding particular Austin Securities accounts, and was not involved in supervising trading activity. *Id.* at ¶¶ 9-11. TradeRight did not act as a broker-dealer in its relationship with Austin Securities; it acted only in a customer service capacity. *Id.*; *see Fleet Boston*, 264 F.3d at 773 (firm that received only financial advice, not investment or brokerage services, was not a customer of a NASD member for purposes of arbitration).

Drawing all reasonable inferences in TradeRight's favor, it was not foreseeable that NASD membership alone would subject TradeRight to arbitration of investor claims in which another clearing broker executed trades using Neovest. Compl. at ¶ 18; *Miller*, 139 F.3d at 1135-36 (to require arbitration of a dispute between a NASD member and an investor whose sole relationship was to the member's predecessor raised the risk of remote liability) (citing *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 815 (11th Cir. 1993)). TradeRight argues that under the Trust's theory, it could be liable to thousands of customers of institutional investors utilizing Neovest. Compl. at ¶ 18. TradeRight contends liability to customers of Neovest users would be remote because TradeRight's software licensing agreement did not provide access to account information. Therefore, TradeRight could not have discovered trading irregularities. *Id.* at ¶¶ 9-10.

The Trust has not met its burden of showing that no relief could be granted to TradeRight under any set of facts consistent with its allegations. TradeRight may be able to prove that the Trust was not its customer. The Trust has not demonstrated that the parties agreed to arbitration. This court need not consider whether their dispute arises in connection with TradeRight's business.

## II. Motion to Transfer Venue

### A. Legal Standard

A court may transfer venue to any district or division where the action might have been brought for the convenience of the parties and witnesses, and in the interest of justice. 28 U.S.C. § 1404(a). The court must consider the § 1404(a) factors and the circumstances of the case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). Weighing the factors is within the district judge's discretion. *Id.* The Trust bears the burden of establishing that the Eastern District of New York is clearly more convenient. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). It is undisputed that venue lies in both this district and the Eastern District of New York. Therefore, the court considers only the convenience of the parties and witnesses, as well as the interests of justice.

### B. Brian Mitchell's Testimony

The Trust argues venue should be transferred because Brian Mitchell, a purportedly material witness, is in a New York prison, beyond the subpoena power of this court. Defs. Mot. at ¶¶ 31, 37. This argument is unpersuasive. The Trust is obligated to "make at least a generalized statement of what [Mitchell's] testimony would have included." *Heller*, 883 F.2d at 1293. The Trust states Mitchell "is a material witness regarding any dispute between the Minakhi Trust and TRC, including issues pertaining to arbitrability." Defs. Mot. at ¶ 34. This vague, conclusory statement is insufficient. *Heller Fin.*, 883 F.2d at 1294; *see also Arena Football League, Inc. v. Roemer*, 947 F. Supp. 337, 341 (N.D. Ill. 1996) (motion to transfer venue denied in part because defendants neglected to provide statements of witnesses' testimony). The Trust does not describe the substance of Mitchell's testimony. Mitchell may be a material witness in the underlying liability dispute.

However, the Trust does not explain how his testimony is material to arbitrability. The dispute is arbitrable only if the Trust and TradeRight agreed to arbitrate. The Trust does not argue Mitchell or Austin Securities was a party to any purported arbitration agreement with TradeRight.

The Trust argues this court lacks the power to subpoena Mitchell because he is in New York, over 100 miles outside of the district. Fed. R. Civ. P. 45(b)(2). The Trust does not acknowledge the inherent difficulty in obtaining a prisoner's testimony, even if venue were transferred to the district in which he is incarcerated. The testimony of a witness beyond the court's subpoena power may ordinarily be obtained by deposition. The availability of a prisoner for deposition is an issue the Trust must address to the sentencing court and to prison authorities.

The Trust does not argue that venue should be transferred for the convenience of the parties or in the interests of justice. TradeRight chose to litigate in Illinois, and deference is owed to its forum choice. *Chicago, Rock Island and Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). Transfer of venue to the Eastern District of New York would merely shift the inconvenience to TradeRight. *Heller*, 883 F.2d at 1294.

## CONCLUSION

The Trust's motion to dismiss or, alternatively, to transfer venue is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

March 5, 2007